UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re　　　　　　　　　　　　　　　　　) Case No. _____
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　) NOTICE OF MOTION FOR RELIEF
　　　　　　　　　　　　　　　　　　　) FROM (Check all that apply):
　　　　　　　　　　　　　　　　　　　)    AUTOMATIC STAY IN A **CHAPTER 7/13** CASE
Debtor(s)　　　　　　　　　　　　　　) 　　 CHAPTER **13** CODEBTOR STAY

I. YOU ARE NOTIFIED that a Motion was filed by _____, the moving party, for (Check all that apply):

　　☐ Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

　　☐ Relief from the stay protecting the codebtor, whose name and service address are: _____
_____,
and codebtor's property as provided by 11 USC §1301.

II. A copy of the Motion is attached. The name and service address of the moving party's attorney (or moving party, if no attorney) are:_____
_____

III. If you wish to resist the Motion, you must, within 14 days of the service date shown below, file the following with the Clerk of the U.S. Bankruptcy Court [NOTE: if you mail or have a courier deliver the Response to the Court for filing, you must mail it or initiate the delivery sufficiently before the deadline so that it will actually be received at the Court on time.]

　　A. A written response that states the facts supporting the opposition to the Motion by filling in the applicable "Response" portions on a copy of the original Motion. [NOTE: If the Response will be electronically filed, the Response must be prepared using the "fillable" pdf version of the original Motion unless the Motion was filed on paper and could not be electronically obtained from the movant];

And B. A fully completed Notice of Hearing using Local Form #721, including the date and time of the hearing. Available hearing dates and times are posted on the Court's website at www.orb.uscourts.gov under the "Hearings" heading. If you do not have internet access, please call the Court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information from a Court clerk.

IV. <u>Failure to Respond and Serve Proper Notice of Hearing</u>. If you fail to file a timely response and a proper Notice of Hearing, then either:

　　A. The automatic stay will expire as to the debtor(s) pursuant to 11 USC §362(e) 30 days after the Motion was originally filed, and/or the stay protecting the codebtor will automatically expire pursuant to 11 USC §1301(d) 20 days after the date the Motion was originally filed;

Or B. The Court may sign an ex parte order, submitted by the moving party on Local Form #720.90, granting relief from the debtor stay and/or codebtor stay.

　　　　　　　　　　　　　　　　　　Clerk, U.S. Bankruptcy Court
　　　　　　　　　　　　　　　　　　[NOTE: If the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; <u>OR</u> if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401.]

I certify that: (1) The Motion was prepared using the Court's "fillable" PDF version of Local Form #720.80; and (2) that on _____ I served copies of this Notice and the Motion on the Debtor(s), any codebtor at the address listed above, Trustee, U.S. Trustee, members of any committee elected pursuant to 11 USC §705, and their respective attorneys.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Signature of Moving Party or Attorney　　　　　　**(OSB#)**

720 (12/1/13)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                    )   Case No._____
                                         )
                                         )   (CHECK ALL APPLICABLE BOXES)
                                         )      Ch. 7/13 Motion for Relief from
                                         )          ☐ DEBTOR   ☐ Chapter **13** CODEBTOR Stay
                                         )      Filed by Creditor:
                                         )      _____
                                         )      *Response to Stay Motion filed by Respondent:*
Debtor(s)                                )      _____

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** *(To be completed by creditor)*

    a. Description of collateral (car model, year, VIN, property address):



    b. Amount of debt: $_____ consisting of principal: $_____; interest: $_____; other:



    c. Description, amount and priority of other encumbrances on collateral.  If not known, include applicable information from debtor's schedules if available on PACER:



    Total debt secured by collateral (total 1.b. + 1.c.):  $_____.

    d. Value of collateral: $_____.
       Equity in collateral: $_____, after deducting $_____ liquidation costs.

    e. Current monthly payment: $_____.

    f. If Chapter 13:

        (1) $_____ postpetition default consisting of (e.g., $____ payments, $____ late charges, $____ fees):

        (2) $_____ prepetition default consisting of  ☐ amounts specified in proof of claim, or, ☐ consisting of:



    g. If Chapter 7, total amount of default $_____.

**RESPONSE** *(Identify specific items disputed and specify what you contend are the pertinent facts including why there is a postpetition default, if applicable) (to be completed by respondent):*

2. **Relief from stay should be granted because (check all that apply):** *(To be completed by creditor)*
   Lack of adequate protection because of failure to make sufficient adequate protection payments and lack of a sufficient equity cushion.
   Lack of insurance on collateral.
   No equity in the collateral and the property is not necessary for an effective reorganization.
   Failure of debtor to make Chapter 13 plan payments.
   Failure of debtor to make payments to secured creditor required by ¶4 of Chapter 13 plan.
   Other (describe):

*RESPONSE (Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using Local Form (LBF) #720.90 available at www.orb.uscourts.gov under Rules & Forms/Local Bankruptcy Forms (LBF)) (to be completed by respondent):*

3. **Background** *(To be completed by creditor)*

   a. Date petition filed: _____    Current Chapter: \_\_\_\_ (7 or 13)
      If 13, current plan date _____    Confirmed:   Yes    No
      If 13, treatment of creditor's prepetition claim(s) in plan:

      If 7, debtor   has   has not stated on Local Form (LBF) #521 or #521.05 that debtor intends to surrender the collateral.

   b. Creditor has a lien on the collateral by virtue of (check all applicable sections and also see ¶6 below):
      Security agreement, trust deed or land sale contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected as required by applicable law on _____.
      Retail installment contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected on the certificate of title on _____.
      Other (describe):

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

4. **Request for Relief from Codebtor Stay** (Only Chapter **13**)

   a. _____, whose address is _____
      _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Creditor should be granted relief from the codebtor stay because (check all applicable boxes):   codebtor received the consideration for the claim held by creditor,   debtor's plan does not propose to pay creditor's claim in full,   creditor's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above and/or   because:

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

5. **Other Pertinent Information** *(To be completed by creditor, if applicable):*

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

6. **Relief Requested (check all applicable sections):** *(To be completed by creditor)*

   Creditor requests relief from the automatic stay to allow it to foreclose its lien on the above identified collateral, and, if necessary, to take appropriate action to obtain possession of the collateral.

   Creditor has a security interest in real property and requests relief from stay with respect to an act against such property and that the relief be binding in any other bankruptcy case purporting to affect such real property filed not later than 2 years after the date of the entry of an order granting this motion. (*If you check this box, you must complete ¶5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*)

   Creditor requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

   Other (describe and explain cause):

*RESPONSE (Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using Local Form (LBF) #720.90 available at www.orb.uscourts.gov under Rules & Forms/Local Bankruptcy Forms (LBF)) (to be completed by respondent):*

7. **Documents:**

   **If creditor claims to be secured in ¶3.b. above** creditor has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**RESPONDENT requests creditor provide** Respondent with the following document(s), if any marked, which are pertinent to this response:

Postpetition payment history.
Documents establishing that creditor owns the debt described in ¶1 or is otherwise a proper party to bring this motion.
Other document(s) (specific description):

CREDITOR/ATTORNEY

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

RESPONDENT **DEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

RESPONDENT **CODEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

*YOU ARE HEREBY NOTIFIED THAT THE CREDITOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

| KURT STEINBACH | | |
|---|---|---|
| 9411 SCHUYLER ST NE | | U.S. Bank National Association ND |
| PORTLAND           OR | | |
| 97220-4347 | | |
| **Borrower's Name and Address** "You" means each borrower above, jointly and severally. | | **Lender's Name** "We" or "us" means the lender named above. |

| Account # ▇▇▇▇▇▇ | Draw Period _____ 15 years | Maturity Date __05/18/2033__ |
|---|---|---|
| Date 05/19/2008 | Repayment Period _____ 10 years | Billing Cycle: _____ monthly |
| Trans. Acct. # _____ | | Payment Date _____ 18th |
| Line of Credit $ 100,000.00 | | of every _____ month |

## U.S. BANK EQUILINE AGREEMENT

**GENERALLY:** This is an agreement about your home equity line of credit. Many of the terms we use in this agreement have special meanings. The term "Loan Account Balance" means the sum of the unpaid principal of loans made under this plan, plus unpaid but earned finance charges, plus any credit insurance premiums that are due. "Transaction Account" means a deposit account you carry with U.S. Bank, N.A. The number of this account is listed near the top of the form on the line labeled "Trans. Acct. #." "Line of Credit" means the maximum amount of principal we will ordinarily allow you to owe us under this plan at any time.

In addition, we will use the following terms for this home equity plan: "Draw Period" is the time during the plan that you may request advances and will make payments on your loan account balance. The "Repayment Period" is the time during the plan that you must repay your loan account balance but cannot get further advances. Except where otherwise indicated, the disclosures contained in this agreement apply to both the draw and repayment periods.

If any term of this agreement violates any law or for some other reason is not enforceable, that term will not be part of this agreement.

**TAX DEDUCTIBILITY:** We make home equity "EQUILINE" loans where the line of credit ceiling can be (when combined with other liens) up to 125% of the value of the property. We want to make sure you are aware that interest may not be deductible to the extent (for that portion of your indebtedness) that the residence does not adequately secure the loan. This is true when (and to the extent) total liens on the property exceed its fair market value. You should consult a tax advisor regarding the deductibility of interest and charges under this home equity plan.

**REQUESTING A LOAN:** You request a loan under this plan whenever you:
* Write a check using one of the special checks you have for that purpose.
* Use the VISA® credit card we supply you to make purchases or receive cash loan advances.
* You may also choose to attach this Line of Credit to your Transaction Account with our affiliate U.S. Bank, N.A. If you "overdraw" the Transaction Account, by any method allowed for withdrawal from that account, you will get an advance on this Line of Credit, up to your credit limit. (If you attach this Line of Credit to your Transaction Account, when you "overdraw" the deposit account and an advance can be made from your Line of Credit, you will not be charged an overdraft charge on your Transaction Account if you have not thereby exceeded your credit limit under this plan. If you elect this feature, then the Transaction Account to which this Line of Credit is attached will be listed above on the line labeled "Trans. Acct. #".)

However, we will not ordinarily grant any request for a loan which would cause the unpaid principal of your loan account balance to be greater than the Line of Credit listed in this agreement. We may, at our option, grant such a request without obligating ourselves to do so in the future.

**TRANSACTION LIMITATIONS:** There are a few "indirect" limitations on the transactions you can make to this account. These are not limitations on this account, but limitations that are part of an access method. For example, if you attach this account to your transaction account (overdraft protection) and if you have an ATM card or debit card that can access that transaction account, then the electronic funds transfer limitations that are part of your ATM or debit card are "indirect" limits on the number and dollar amount of your access to this account per day by those methods. These are not really limits on the amount or number of advances you can get from this account, but are limits inherent in ATM and debit card transactions. Also, if you attach this account to your deposit account, then advances from this account arising from "overdrafts" will occur, once a day, in multiples of $100.

**FIXED RATE OPTION:** At any time during the Draw Period you may convert the interest rate and repayment schedule, for up to the amount of the then outstanding credit line balance (not including any previously locked principal balance), subject to the following conditions:
* The Fixed Rate Option period will be for a term that you select, with a maximum term of (a) 20 years or (b) the then remaining term of the draw and repayment period, whichever is less.
* The term cannot be less than 12 months.
* The minimum amount is $2,000.
* You can have no more than 3 Fixed Rate Options in effect at any one time. The fee for each will be $50.
* The unpaid principal balance is part of your maximum credit limit, and a principal portion of each payment amount will replenish your credit limit as of the date a payment is posted.
* You cannot add an amount to a Fixed Rate Option after it is established; each is a separate event.

**Rate.** The fixed simple interest rate will be determined by reference to The Wall Street Journal Prime Rate in effect on the date of the Fixed Rate Option plus (or minus) a margin. A new margin is established for the Fixed Rate Option; this margin is not the same as the one used for the variable rate portion of your Line of Credit. You can call us to learn our current rates for Fixed Rate Options.

**Payment.** You have two choices of payment for Fixed Rate Option:
  A) Interest-Only payment amounts where each Fixed Rate Option will have its own payment amount equal to the amount of the accrued finance charges outstanding on the last day of the billing cycle. The term is at the discretion of the bank and may be less than 20 years. Under this payment choice the outstanding principal balance of the Fixed Rate Option will not be reduced and the entire principal balance will revert back to the variable portion of the line at the end of the Fixed Rate Option term and be subject to terms and conditions listed in this agreement.
  B) Fixed payment amounts where each Fixed Rate Option will have its own payment amount, determined by applying the rate to the amount of the Fixed Rate Option for the term of the Option, and producing equal monthly payments of principal and interest over the term of the Fixed Rate Option.

**Minimum Payment.** Your minimum payment each month will be determined by adding the scheduled Fixed Rate Option payment(s) to the minimum payment amount determined under the "HOW YOU REPAY YOUR LOAN" section of this agreement with respect to the revolving portion of your outstanding balance. You may repay the amount in whole or in part, but any prepayment will not excuse any later scheduled Fixed Rate Option payment until it is paid in full.

**Method.** You can establish a Fixed Rate Option by contacting us. A full disclosure of all terms will be provided to you at the time the Fixed Rate Option is established.

**HOW FINANCE CHARGES ARE COMPUTED:** To calculate the actual daily balance, take the loan account balance at the beginning of the day and subtract any accrued but unpaid finance charges and insurance premiums (if any). Next, add all new loans posted to the account that day and subtract the portion of any payments or credits received that day which apply to the repayment of the loans.

The average daily balance is determined by taking the sum of all the actual daily balances divided by the number of days in the billing cycle.

Finance charges will begin to accrue immediately when a loan is advanced. To calculate the finance charge for a billing cycle, apply the daily periodic rate of finance charge to the average daily balance of the loan account times the number of days in the billing cycle.

If the daily periodic rate varies during the billing cycle, the finance charge will be calculated by applying each daily periodic rate of finance charge to the average daily balance of the loan account times the number of days the rate was in effect. The sum of these products is the finance charge.

(page 1 of 6)

© 1983 Wolters Kluwer Financial Services - Bankers Systems™ Form USBOCPHE-NDX 9/8/2006

INITIAL RATE: The initial daily periodic rate of **FINANCE CHARGE** is ___.01162___ % which corresponds to an **ANNUAL PERCENTAGE RATE** of ___4.24000___ %. The annual percentage rate includes interest and not other costs.
Disclosures: The disclosures of initial daily periodic rate of FINANCE CHARGE and ANNUAL PERCENTAGE RATE in the previous paragraph, and in the next paragraph (if it is checked and completed) are based on rates and conditions as of ___5/19/2008___.

☐ The **INITIAL RATE** above will remain fixed until _____.
Beginning on that day, the daily rate and the corresponding annual percentage rate will be the sum of the index and margin, and can change as provided below in the paragraph titled **VARIABLE RATE**. After that day the rates will be subject to further adjustments and limitations, and produce the effects described below.
This initial rate represents a discount from the rate that will apply. If this discount were not in effect, then the daily periodic rate of

**FINANCE CHARGE** would have been _____ %, which would correspond to an **ANNUAL PERCENTAGE RATE** of _____ %.

**VARIABLE RATE:** The annual percentage rate may change, and will be ___.760 BELOW___ (This amount is known as the "margin.") the following "base rate": the highest rate on corporate loans at large U.S. money center commercial banks that The Wall Street Journal publishes as the Prime Rate.
If this base rate increases (after any fixed initial rate period, if so provided), the annual percentage rate will increase. An increase will take effect on the day the base rate changes. An increase in the base rate, and an increase in the rate caused by the loss of a preferential rate (such as that made to a customer who arranges for electronic payments) will result in an increase in the finance charge and may have the effect of increasing your minimum monthly payment amount (depending on the payment option you chose and the amount of the increase). A decrease in the base rate will have the opposite effect on your required minimum monthly payment.
The annual percentage rate will not increase more often than once a day. A decrease will have the opposite effect of an increase disclosed above.
The "annual percentage rate" referred to in this section is the annual rate which corresponds to the periodic rate applied to the balance as described above. This corresponding **ANNUAL PERCENTAGE RATE** will never exceed 25%. The annual percentage rate will also never exceed the highest allowable rate for this type of agreement as determined by applicable state or federal law.

The **ANNUAL PERCENTAGE RATE** will never decrease below ___3.99___ %.

☐ **TERMS:** If checked, terms provided reflect an adjustment to the lowest annual percentage rate available for this loan product. This adjustment reflects a higher rate of interest or finance charge due to information contained in a consumer credit report. We obtained this report from, and you may obtain a free copy of it by contacting:

**REPORTS TO CREDIT BUREAUS:** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**HOW YOU REPAY YOUR LOANS - DRAW PERIOD:** In addition to the payment due under your fixed rate option, if any, on or before your payment date during the Draw Period, you agree to make a minimum payment. The minimum payment is:

(a) ☒ the accrued finance charges and credit insurance premiums (if any) on the last day of the billing cycle.

(b) ☐ 1% of your account's principal outstanding balance and credit insurance premiums (if any) on the last day of the billing cycle, or $50.00, or the accrued finance charges and credit insurance premiums (if any), whichever is greater.

(c) ☐ 2% of your account's principal outstanding balance and credit insurance premiums (if any) on the last day of the billing cycle, or $50.00, or the accrued finance charges and credit insurance premiums (if any), whichever is greater.

If the interest accrued and credit insurance premiums (if any) on the last day of the billing cycle is greater than your selected payment, you will be billed (or have automatically withdrawn) the greater amount.
All payments due under this agreement will have the same due date.

**PRINCIPAL REDUCTION:** Under option (a) above, during the Draw Period the minimum payment on the revolving portion of the loan will not reduce the principal outstanding on your line. Under both options (b) and (c), during the Draw Period the minimum payment may not fully repay the principal that is outstanding on your line.

**HOW YOU REPAY YOUR LOANS - REPAYMENT PERIOD:** In addition to the payment due under your fixed rate option, if any, on or before each payment date during the repayment period, you agree to make a minimum payment to reduce your debt. The minimum payment amount is the greater of $100.00, or the amount of the accrued finance charges plus 0.83333% of the principal loan balance on the last day of the Draw Period.

**ADDITIONAL REPAYMENT TERMS:** If your loan account balance on a payment date is less than the minimum payment amount, you must pay only the loan account balance.
You can pay off all or part of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic minimum payment.
The amounts you pay will be applied first to credit insurance premiums that are due (if any), then to any finance charges that are due, then to principal, and finally to any other charges that you owe. If the minimum payment amount is not met, the payment will be applied equally to any principal owed on the locked loan(s) and to the Line of Credit.

**FINAL PAYMENT:** At the end of the repayment period listed in this agreement, you must pay the amount of any remaining loan account balance outstanding. The minimum payments may not be sufficient to fully repay the principal that is outstanding on your line. If they are not, you will be required to pay the entire outstanding balance in a single balloon payment.
We are not obligated to refinance your loan at that time, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

**NEGATIVE AMORTIZATION:** In the event that the minimum payment (described in this agreement) does not equal or exceed the amount of any credit insurance premiums and accrued finance charges, the unpaid portion will be carried over to subsequent billing periods and payments made for those periods will first be applied to the carryover amount, then to the current billing cycle fees, charges and principal. This is called negative amortization. Negative amortization will increase the amount you owe us and reduce the equity in your home.

---

**AUTOMATIC WITHDRAWAL:** You authorize us to automatically withdraw your payment from your Transaction Account on each payment date. If your loan account balance is less than the minimum payment amount, we will withdraw only the amount necessary to reduce your loan account balance to zero. If you choose automatic payments, the payments may end because there is not enough money in the deposit account to cover the minimum payment. They may also end if the account is closed, or if you cancel the automatic payments.

You ☐ do     ☒ do not     want Automatic Withdrawal.

Account number for automatic payment:

_____

X_____   X_____
  Signature                       Signature

☐ **AUTOMATIC PAYMENT PREFERRED RATE**
By arranging for automatic loan payments, your interest rate and annual percentage rate are "preferred" rates. If you cause these automatic payments to end, your interest rate will increase as of the first payment date that your payment is not automatically made. This increase will be in the amount of ___0.00000___ % per year. (Your "margin," that is, the amount added to the base rate to get to your interest rate, will be increased by this amount if you lose this preference.)

---

© 1983 Wolters Kluwer Financial Services - Bankers Systems™ Form USBOCPHE-NOX 9/8/2006

(page 2 of 6)

SECURITY: We have secured your obligations under this plan by taking a security interest (by way of a separate security agreement, mortgage or other instrument) in the following property, described by item or type:

        9411 NE SCHUYLER ST

        PORTLAND, OR 97220

    Collateral securing other loans you may have with us may also secure this loan.
    **Property Insurance** is required. You may buy property insurance from anyone you want who is acceptable to us. You are not required to purchase insurance from us (the Bank), or any affiliated insurance agency. Insurance is available through other agents and your choice of insurance provider will not affect our (the Bank's) credit decision or any credit terms in any way.

**ASSUMPTION:** Someone buying your house cannot assume the remainder of the mortgage on the original terms.

**CREDIT INSURANCE:** Credit life, credit accident and sickness (disability) insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). Your signature(s) below means you want the coverage(s) signed for, and ONLY those coverage(s). The rates (per $100) listed below are applied to the outstanding balance of your credit line plus any outstanding locked balance to determine the premium you owe for one billing cycle.

**CREDIT LIFE:**
   ☐ Single: Premium: $ _____ Birthdate _____
   Insured: _____

   X_____ Date _____

   ☐ Joint: Premium: $ _____ Birthdate _____
   1st Insured: _____

   X_____ Date _____
   2nd Insured: _____ Birthdate _____

   X_____ Date _____

**CREDIT DISABILITY:**
   ☐ Single: Premium: $ _____ Birthdate _____
   Insured: _____

   X_____ Date _____

**NONE:** YOU do NOT desire credit insurance of any kind on this account. (All borrowers/debtors sign below)

   X _/s/ Kurt Steinbach_ Date 05/19/08

   X_____ Date _____

**SECURITY INTEREST IN DEPOSIT ACCOUNTS AT U.S. BANK, N.A.**
    **Governing law:** For purposes of this security interest, we agree that the law of the state of North Dakota will control as to the creation, perfection, and effect of perfection of the interest granted in this paragraph. (Technically speaking, we are agreeing that North Dakota is your jurisdiction, as provided in N.D. Stat. § 41-9-24.)
    **Grant:** You grant to us a security interest in any and all deposit accounts (demand, time, savings, passbook, and specifically including but not limited to any certificated time accounts) you currently have or hereafter create with U.S. Bank, N.A. (our affiliate).
    **Exception:** This grant does not apply to accounts that constitute a part of any qualified retirement plan (such as an Individual Retirement Account), any retail repurchase agreement, or any account where your only right is clearly and solely in a representative capacity.

**Secures:** This security interest secures the payment of this debt and any other debt you may owe us, now or hereafter.
**Usage:** You give us the right to direct the U.S. Bank, N.A. to restrict or prohibit further withdrawals from your accounts, and to comply with our instructions directing disposition of funds in your accounts, including but not limited to, the right to apply such funds toward payment of the secured debts. While we have the right to do this at any time, and without notice, it is our present intention to exercise these rights only in the event of your default on this or any other secured obligation, and to provide notice to you.
U.S. Bank, N.A. agrees to comply with our instructions for disposition of funds in your accounts without first obtaining your consent (other than the consent contained and expressed in this agreement).
You understand that U.S. Bank, N.A. is our affiliate.
**Setoff:** You also acknowledge that U.S. Bank, N.A. has a right of setoff in the event you owe money to U.S. Bank, N.A. This right of setoff, in the event of a conflict with the security interest granted here, will be subordinate to this security interest.
**Priority:** The residence that secures this loan is the primary security. The security interest granted herein (in deposit accounts) will be resorted to only in the event of a deficiency in the equity of the residence.

**CHARGES OTHER THAN YOUR PERIODIC FINANCE CHARGES ("OTHER CHARGES"):** You agree to pay the following additional charges:

♦ **Annual Fee:** A non-refundable annual fee of $ ___90.00___ . For plans with an annual fee, we waive this fee for the first year of a plan and we charge the fee to the account on the first anniversary of the plan and each year thereafter, including the repayment period.

♦ **Prepayment Penalty:** A prepayment penalty of 1% of the Line of Credit (with a minimum of $250 and a maximum of $500) if you prepay in full and close this Line of Credit within 3 years from today's date.

♦ **Cash Advance Fee:** 2% of each cash advance using a VISA Gold Card issued on this account. The minimum fee for each advance is $1.50. The maximum is $10.00.

♦ **Late Charge:** If any payment is not made within 5 days after its due date, you agree to pay a late payment fee of $25.00.

♦ **Stop Payment:** If you issue a stop payment order on any check written against the Account, you will pay us a fee of $25.00.

♦ **Returned Payment:** If you pay us with a check or an ACH payment which is returned to us unpaid by the payor, you agree to pay us a returned check fee of $25.00.

♦ **Overline Fee:** If you borrow an amount against the Account in excess of your Line of Credit, you agree to pay us an Overline fee of $25.00. This fee will apply each day we pay an advance and you are over your credit line at the end of that day.

♦ **Returned Advance Request:** If we return any checks that would, if paid, cause you to exceed your Line of Credit, you agree to pay us a Returned Advance Request fee of $25.00 per check.

| | |
|---|---|
| Points | $ _____ ; |
| Origination Fee | $ _____ ; |
| Appraisal | $ _____ ; |
| Official Fees | $ _____ ; |
| Title Insurance | $ _____ ; |
| Title Search | $ _____ ; |
| Flood Zone Search | $ _____ ; |
| Broker Fee | $ _____ ; |
| Document Preparation Fee | $ _____ ; |
| Title Service Fee | $ _____ ; |
| _____ | $ _____ ; |
| _____ | $ _____ ; |
| _____ | $ _____ . |

**COSTS OF COLLECTION:** You agree to pay the costs we incur to collect this debt and realize on any collateral in the event of your default.
   In the event of your bankruptcy, and without regard to your state of residence, these costs will include your reasonable attorney's fees for an attorney who is not our salaried employee in the bankruptcy proceedings.

                                                              (page 3 of 6)

© 1983 Wolters Kluwer Financial Services - Bankers Systems™ Form USBOCPHE-NOX 9/8/2006

The following additional fees and issues will depend on whether we have to collect this loan in a listed state:

In **Alabama** if the unpaid balance is more than $300, these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) if it is necessary to bring suit, up to 15% of the amount due and payable under this note.

In **Arizona, California, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nevada, New Mexico, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia, and Washington** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee).

In **Arkansas** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) not to exceed 10% of the amount of principal and accrued interest.

In **Colorado, North Carolina, and South Carolina** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) not to exceed 15% of the unpaid debt after default.

In **Delaware**, these costs will include costs of alternative dispute resolution, or other collection costs actually incurred by us should you be in default, including reasonable attorney's fees when the attorney is not a regularly salaried employee of ours, and including fees and charges of collection agencies.

In **Florida** these costs will include reasonable attorney's fees that we incur in legal proceedings to collect or enforce this debt should you be in default.

In **Georgia**, these costs include attorney's fees of 15% of the principal and interest then owed. You waive and renounce any exemption you may be entitled to under Georgia law as to any property that secures this debt. You assign any such exemption to us.

In **Idaho** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee). This provision for attorney's fees does not apply if this loan is a consumer loan with a principal amount of $1,000.00 or less.

In **Indiana**, these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee); and in any collection efforts, you waive any relief you might be entitled to from evaluation and appraisement.

In **Iowa**, if the credit limit is greater than $25,000 then these costs include our reasonable attorney's fees to collect this note, including such fees on appeal.

In **Louisiana**, these costs include our reasonable attorney's fees not to exceed 25% of the unpaid debt after default and referral to an attorney for collection.

In **Maine, Nebraska, North Dakota, Ohio and West Virginia** these costs will not include attorney's fees.

In **Kansas** these costs will include our reasonable attorney's fees or collection agency fees, up to 15% of the unpaid amount due and payable under this note. We are entitled to the collection of attorneys' fees or collection agency fees, but not both. This provision is applicable only if collection is handled by someone other than a salaried employee of ours.

In **Missouri** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) if it is necessary to bring suit up to 15% of the amount due and payable under this note.

In **New Hampshire**, this includes our reasonable attorneys' fees. If you successfully assert a partial defense or set-off, recoupment or counterclaim to an action we bring, the court may reduce the amount of attorneys' fees that we may recover from you. If you prevail in an action or defense against us, you may recover the amount of your reasonable attorney's fees.

In **Oklahoma** these costs will include our reasonable attorney's fees (for an attorney who is not our salaried employee) not to exceed 15% of the unpaid debt after default; this provision for attorney's fee does not apply to certain supervised loans as provided in Okla. Statutes 14A § 3-514.

In no state or event do we intend to claim or collect attorney's fees in circumstances when we are not entitled to do so.

**CHANGING THE TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this agreement. However, we may change the terms in the following circumstances:

- If this is a variable rate plan, we may change the index and margin if the original Index described in this agreement becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.
- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.

If we are required to send notice of a change in terms, we will send the notice to your address listed in this agreement. (You should inform us of any change in address.)

**DEFAULT:** You will be in default on this agreement if any of the following occur:
(1) You engage in fraud or material misrepresentation, by your actions or failure to act, in connection with any phase of this home equity Line of Credit (except in Iowa, Missouri, and Kansas, though such fraud may cause or contribute to a default under paragraph 3 of this section);
(2) Subject to any right to cure you may have, if any, you do not meet the repayment terms or otherwise fail to perform any obligation under this Agreement or any other agreement you have with us (In Iowa, this means, as to payments, failure to make a payment within 10 days of when it is due.);
(3) Your action or inaction adversely affects the collateral or our rights in the collateral, including but not limited to: (a) failure to maintain required insurance on the dwelling; (b) your transfer of the property; (c) failure to maintain the property or use of it in a destructive manner; (d) commission of waste; (e) failure to pay taxes on the property or otherwise fail to act and thereby cause a lien to be filed against the property that is senior to our lien; (f) death; (g) the property is taken through eminent domain; (h) a judgment is filed against you and subjects you and the property to action that adversely affects our interest; or (i) a prior lien holder forecloses on the property and as a result, our interest is adversely affected.
(4) You become an Executive Officer of Bank or a related company.

**COLLATERAL PROTECTION INSURANCE:** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance of obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**CASH ADVANCES:** Cash advances may be obtained with your VISA® CARD at most FastBANK®, PLUS® SYSTEM, and UBANK® automated teller (ATM) locations. ATM transactions for your card are limited to $1,000.00 per day. Cash advances are also limited by your Credit limit. Each ATM has a minimum withdrawal amount. Cash advances from a teller must be at least $50.00. See the "EXPANDED ACCOUNT ACCESS" section about other cash advances.

**LIMITS ON LIABILITY FOR VISA® CARD:** Unless you have been grossly negligent or engaged in fraud, you will not be liable for any unauthorized transactions using your lost or stolen card.

**REMEDIES:** The exercise of our remedies is subject to (a) any cure, reinstatement and redemption rights you may have; and (b) any notice of such rights to which you are entitled, as provided by state law. We will provide these rights, and notice of them, as required.

We may terminate your account, require you to pay the entire outstanding balance in one payment and charge you fees related to the collection of the amount owing, if you are in default in any manner described above. In that instance, we may take other action short of termination, such as charging you a fee if you fail to maintain required property insurance and we purchase insurance.

In the event that we terminate your account, we will send you notice of our decision at the address listed on the front of this agreement. (You should inform us of any change in your address.)

Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

**SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:** We may temporarily prohibit you from obtaining additional extensions of credit, or reduce your credit limit if:
(1) The value of the dwelling securing this home equity Line of Credit declines significantly below its appraised value for purposes of this line;
(2) We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances;
(3) You are in default of a material obligation of this agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;
(4) A governmental action prevents us from imposing the annual percentage rate provided for in this agreement;

*KAS* (page 4 of 6)

© 1983 Wolters Kluwer Financial Services - Bankers Systems™ Form USBOCPHE-NDX 9/8/2006

(5) The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity line;
(6) The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this plan (if provided for in this agreement);
(7) A regulatory agency has notified us that continued advances would constitute an unsafe business practice; or
(8) After a payment has been made, we reserve the right to withhold available advances in the amount of the principal portion of the payment up to 7 business days from the date we receive the payment. Any credit available before the payment is received will continue to be available for advances during this time.

In the event that we suspend your right to additional advances or reduce your credit line, we will send you notice of our decision at the address listed in this agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under this plan, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

**JOINT ACCOUNTS:** If this is a joint account, each of you will be jointly and severally liable for all amounts due under the account. Upon request by either party to the Account or upon receipt of inconsistent instructions, we may, at our option and without notice to the other party, follow the instructions of either party, honor any Check, refuse to pay any Check, or refuse any other request with respect to the Account.

**CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this plan. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

You authorize us to make or have made any credit inquiries we feel are necessary. You also authorize the persons or agencies to whom we make these inquiries to supply us with the information we request.

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities*
*After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**EXPANDED ACCOUNT ACCESS**
This is to advise you that, with U.S. Bank, N.A. and its affiliates:
* Any card or PIN issued to or selected by you under this agreement will access multiple checking, savings, Line of Credit and credit card account(s) in your name at Bank or any of its affiliates; and
* Your Account under this agreement may be accessed by any card(s) or PIN(s) that you have selected or that has been issued to you or may in the future be selected by you or issued to you by Bank or any of its affiliates.

"Access" means use of a card or account number and PIN to conduct a transaction or obtain information at ATMs or via telephone, personal computer banking, or any other available method. There are no additional fees or charges for multiple account access. The fees and terms disclosed for each account apply. You understand that at UBank ATMs this multiple account access may be available for up to five checking, five savings, and five Line of Credit or credit card accounts. At other ATMs and with other methods of access, other limitations may apply.

You can, if you wish change this access and restrict the accounts that may be accessed by your card code or pin number.

**ARBITRATION:** You agree that if a dispute of any kind arises out of this agreement, either you or we can choose to have that dispute resolved by binding arbitration. If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or to have a jury trial on that claim, or to engage in pre-arbitration discovery, except as provided for in the arbitration rules. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any claim subject to arbitration. The Arbitrator's decision will generally be final and binding. Other rights that you would have if you went to court may also not be available in arbitration. It is important that you read this entire Arbitration Provision carefully before accepting the terms of this agreement. Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to (a) the credit or services offered or provided to you, (b) the actions of you, us or third parties or (c) the validity of this arbitration provision (individually and collectively, a "Claim") must, after an election by you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Commercial Arbitration Rules of the American Arbitration Association ("AAA") in effect when the Claim is filed (or, in the event this arbitrator or these arbitration rules are no longer available, then a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis). There shall be no authority for any Claims to be arbitrated on a class action basis. An arbitration can only decide our or your Claim and may not consolidate or join the claims of other persons who may have similar claims. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will take place in the federal judicial district where you reside. At your request, we will advance the first $250 of the filing and hearing fees for any Claim you may file against us; the arbitrator will decide whether we or you will ultimately pay those fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations, and shall honor claims of privilege recognized at law. Judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction. This Arbitration Provision shall survive repayment of your extension of credit and termination of this account. This arbitration provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* If any provision of this Section is ruled invalid or unenforceable, this Section shall be rendered null and void in its entirety.

*(page 5 of 6)*

© 1983 Wolters Kluwer Financial Services - Bankers Systems™ Form USBOCPHE-NDX 9/8/2006

<div style="border: 1px solid">

To Residents of Missouri specifically, and residents of other states generally.

**Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

</div>

<div style="border: 1px solid">

This note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this note may, on behalf of the maker of this note, create a microfilm or optical disk or other electronic image of this note that is an authoritative copy as defined in such law. The holder of this note may store the authoritative copy of such note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

</div>

**SIGNATURES:** By signing below, you understand we are a national banking association located in North Dakota and the interest rate and related charges are pursuant to the law of North Dakota and federal law. The law of the state where you are located and of the state where the property is located may apply to other issues. In addition, you agree to the terms on all pages of this agreement and you promise to pay any amounts you owe under this agreement. You also state that you received a completed copy of the agreement on today's date.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Signature _/s/ Kurt Steinbach_

Signature _____

By _____

<div style="border: 1px solid">

**AUTHENTICATION BY U.S. BANK, N.A.:**
U.S. Bank, N.A. affiliate of and agent for the lender on this loan, acknowledges and agrees to the control agreement contained in the Security Interest in deposit accounts, and the subordination of its right of setoff to this security interest if and to the extent of a conflict. This is intended as an authentication.
U.S. BANK, N.A.

</div>

Maximum Obligation Limit $ 100,000.00
Maturity Date 05/18/2033
When recorded return to:
U.S Recordings, Inc.
2925 Country Drive, Suite 201
St. Paul, MN 55117

Multnomah County Official Records    2008-091863
C Swick, Deputy Clerk

$36.00

0034588220080091863004046    06/18/2008 11:34:31 AM

1R-LOCTRD            Cnt=1 Stn=27 ATVLM
$20.00 $11.00 $5.00

─── State of Oregon ───────────────── Space Above This Line For Recording Data ───

ALS#: ~~illegible~~

SHORT FORM TRUST DEED    45735134
LINE OF CREDIT
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Short Form Trust Deed Line of Credit (Security Instrument) is 05/19/2008 ................. . The parties and their addresses are:

GRANTOR:
KURT STEINBACH AND DARLENE STEINBACH, HUSBAND AND WIFE

☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

TRUSTEE:
U.S. Bank Trust Company, National Association
111 S.W. Fifth Avenue, Suite 3500
Portland, OR 97204

LENDER:
U.S. Bank, National Association N.D.
4355 17th Avenue, S.W.
Fargo, ND 58103

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
The real estate mortgage herein is described in Exhibit "A" which is attached hereto and hereby incorporated herein by reference.

37414063

OREGON - HOME EQUITY LINE OF CREDIT DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 2006 Wolters Kluwer Financial Services - Bankers Systems® Form USBOCPSFDTOR 8/25/2006 .

The property is located in MULTNOMAH ................................................ at 9411 NE Schuyler St ..............
                                    (County)
................................................, PORTLAND ................................., Oregon 97220 ..............
        (Address)                                              (City)                                        (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. MAXIMUM OBLIGATION LIMIT. The total principal amount secured by this Security Instrument at any one time shall not exceed $ 100,000.00 .............................. . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. SECURED DEBT AND FUTURE ADVANCES. The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*

   Borrower's Name(s):  KURT STEINBACH

   Note Date:           05/19/2008           Maturity Date:   05/18/2033

   Principal/Maximum    100,000.00
   Line Amount:

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C. All other obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Grantor's principal dwelling that is created by this Security Instrument

37414063

5. MASTER FORM. By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Master Form Line of Credit Trust Deed (Master Form), inclusive, dated ..01/17/2007 12:23 pm... and recorded as Recording Number .N/A........................... or Instrument Number .2007009287................. in Book N/A.................................. at Page(s) .N/A............ in the .MULTNOMAH................ County, Oregon, County Recorder's office are hereby incorporated into, and shall govern, this Security Instrument. This Security Instrument will be offered for record in the same county in which the Master Form was recorded.

SIGNATURES: By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1 and a copy of the provisions contained in the previously recorded Master Form.

_____  05/19/08   _____  5/19/08
(Signature) KURT STEINBACH            (Date)   (Signature) DARLENE STEINBACH           (Date)

ACKNOWLEDGMENT:
(Individual) STATE OF ...Oregon..................., COUNTY OF ...Multnomah............... } ss.
This instrument was acknowledged before me this ......19...... day of ...May........ 2008.
by KURT STEINBACH and Darlene Steinbach, Husband & Wife.
My commission expires: Sept 16, 2009
(Seal)
_____
(Notary Public)

KARMA GALLONI

OFFICIAL SEAL
KARMA GALLONI
NOTARY PUBLIC - OREGON
COMMISSION NO. 394578
MY COMMISSION EXPIRES SEPTEMBER 16, 2009

---

REQUEST FOR RECONVEYANCE
(Not to be completed until paid in full)

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel this Deed of Trust, which is delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

.................................................   ...........................................
(Authorized Bank Signature)                        (Date)

---

This instrument was prepared by..........................
First American 1100 Superior Avenue
Suiete 210
Cleveland, OH 44114

37414063

EXHIBIT A


A PARCEL OF LAND IN THE SOUTHEAST ONE-QUARTER OF SECTION 28,
TOWNSHIP 1 NORTH, RANGE 2 EAST, OF THE WILLAMETTE MERIDIAN,
IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF
OREGON, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTH ONE-QUARTER CORNER OF SAID SECTION 28;
THENCE NORTH 0 DEGREES 37 MINUTES 30 SECONDS EAST ALONG THE
NORTH-SOUTH CENTER LINE OF SAID SECTION 28, A DISTANCE OF
829.20 FEET TO THE NORTH LINE OF NORTHEAST SCHUYLER STREET;
THENCE NORTH 89 DEGREES 13 MINUTES 00 SECONDS EAST ALONG SAID
NORTH LINE 592.57 FEET TO THE TRUE POINT OF BEGINNING; THENCE
NORTH 89 DEGREES 13 MINUTES 00 SECONDS EAST 50.19 FEET TO THE
SOUTHWEST CORNER OF A TRACT OF LAND CONVEYED TO R.L.C.
CONSTRUCTION COMPANY, AND OREGON CORPORATION, BY DEED
RECORDED FEBRUARY 3, 1977 IN BOOK 1155 PAGE 378; THENCE NORTH
0 DEGREES 37 MINUTES 30 SECONDS EAST 130.74 FEET TO THE
SOUTHEAST CORNER OF A TRACT OF LAND CONVEYED TO CHARLES S.
RYDER, ET UX, BY DEED RECORDED SEPTEMBER 29, 1937 IN BOOK
1418, PAGE 366, DEED RECORDS; THENCE SOUTH 89 DEGREES 13
MINUTES 00 SECONDS WEST ALONG THE SOUTH LINE OF SAID RYDER
TRACT 50.19 FEED; THENCE SOUTH 0 DEGREES 37 MINUTES 30
SECONDS WEST 130.74 FEET TO THE TRUE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF MULTNOMAH, STATE OF OREGON.


Permanent Parcel Number:  R319148
KURT STEINBACH AND DARLENE STEINBACH, HUSBAND AND WIFE

9411 NE SCHUYLER STREET, PORTLAND OR 97220
Loan Reference Number   :  20081291757091
First American Order No:  37414063
Identifier: FIRST AMERICAN LENDERS ADVANTAGE

U45735134-01FB04
DEED OF TRUST

US Recordings